IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| RALPH DANIEL, as Personal Representative of the Estate of CAROLE DANIEL, <br><br> Plaintiff, <br><br> v. <br><br> DOLGENCORP, LLC, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) CIVIL CASE NO. 3:23-cv-135-ECM <br> [WO] |

**MEMORANDUM OPINION and ORDER**

**I. INTRODUCTION**

On December 2, 2022, Carole Daniel ("Ms. Daniel") tripped on a floor mat and fell inside a Dollar General retail store ("Dollar General") in Phenix City, Alabama. Ms. Daniel suffered injuries and sued Dolgencorp, LLC ("Dolgencorp"), the corporate entity operating the Dollar General, in the Circuit Court of Lee County, Alabama, on three grounds: (1) negligence (Count I); (2) wantonness (Count II); and (3) respondeat superior and agency (Count III).[1] (Doc. 1-1 at 10–14, paras. 16–31).[2] On March 9, 2023,

---

[1] The Operative Complaint refers to Ms. Daniel as "Plaintiff or Plaintiff Daniel." (Doc. 1-1 at 8, para. 1). Formally, Ms. Daniel's husband, Ralph Daniel originally brought this suit on her behalf as "husband and next friend of Carole Daniel." (*Id.* at 8).

[2] For clarity, the Court refers to the document and page numbers generated by CM/ECF.

Dolgencorp removed this action to this Court, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332.[3] (Doc. 1 at 4, para. 10).

On June 15, 2024, Ms. Daniel passed away. (Doc. 26 at 1). Ms. Daniel's husband, Ralph Daniel ("Mr. Daniel"), as Personal Representative of the Estate of Carole Daniel, was substituted as the proper plaintiff in this action. (Doc. 36). Following discovery, Dolgencorp moved for summary judgment (doc. 43), which Mr. Daniel opposes (docs. 53 & 54).[4] Dolgencorp's motion for summary judgment is fully briefed and ripe for review.[5] Based on a thorough review of the record, the briefs, the applicable law, and for the reasons that follow, the motion is due to be GRANTED in part and DENIED in part.

## II. JURISDICTION AND VENUE

The parties are completely diverse, and the amount in controversy exceeds $75,000. (Doc. 1). Therefore, the Court has original subject matter jurisdiction in this proceeding pursuant to 28 U.S.C. § 1332. Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

---

[3] The Operative Complaint alleges that Ms. Daniel "was and is a *citizen* and resident of Lee County, Alabama." (Doc. 1-1 at 8, para. 2) (emphasis added). Dolgencorp's notice of removal states, "[a]ccording to the [Operative] Complaint, Plaintiff is an adult *resident* of Lee County, Alabama." (Doc. 1 at 2, para. 5) (emphasis added). The Court construes Dolgencorp's statement "[a]ccording to the [Operative] Complaint" to include the allegation that the Plaintiff was a resident and *citizen* of Lee County, Alabama. (*Id.*).

[4] The remainder of this Memorandum Opinion and Order refers to Mr. Daniel in his capacity as personal representative of Ms. Daniel's estate.

[5] The Court will address Dolgencorp's motion to exclude expert testimony separately. (Doc. 45). Any reliance on the expert opinion here is limited to the portions of the opinion which the Court finds relevant to Dolgencorp's motion for summary judgment.

### III.  STANDARD OF REVIEW

"Summary judgment is proper if the evidence shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311 (11th Cir. 2018) (quoting FED. R. CIV. P. 56(a)).  "[A] court generally must 'view all evidence and make all reasonable inferences in favor of the party opposing summary judgment.'" *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1252 (11th Cir. 2016) (citation omitted).  However, "conclusory allegations without specific supporting facts have no probative value." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924–25 (11th Cir. 2018) (citation omitted).  If the record, taken as a whole, "could not lead a rational trier of fact to find for the non-moving party," then there is no genuine dispute as to any material fact. *Hornsby-Culpepper*, 906 F.3d at 1311 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of demonstrating that there is no genuine dispute as to any material fact, and the movant must identify the portions of the record which support this proposition. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); FED. R. CIV. P. 56(c).  The movant may carry this burden "by demonstrating that the nonmoving party has failed to present sufficient evidence to support an essential element of the case." *Id.* at 1311.  The burden then shifts to the nonmoving party "to establish, by going beyond the pleadings, that a genuine issue of material fact exists." *Id.* at 1311–12.  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.  Nonmovants

must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A) & (B).

In determining whether a genuine issue for trial exists, the court must view all the evidence in the light most favorable to the nonmovant. *Fla. Int'l Univ. Bd. of Trs.*, 830 F.3d at 1252. Likewise, the reviewing court must draw all justifiable inferences from the evidence in the nonmoving party's favor. *Id.* However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam).

## IV.  FACTS[6]

On December 2, 2022, Ms. Daniel went shopping at her local Phenix City, Alabama Dollar General. (Doc. 1-1 at 9, para. 11).[7] Ms. Daniel entered the store—walked across a floor mat—grabbed a shopping cart,[8] and proceeded to shop. (Doc. 53-1 at 10:12:11–

---

[6] Because this case comes before the Court on Dolgencorp's motion for summary judgment, the Court construes the facts in the light most favorable to Mr. Daniel, the nonmovant. The Court draws all justifiable inferences in his favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

[7] Dollar General's surveillance system recorded the events before, during, and after Ms. Daniel's shopping trip. The Court cites the video surveillance footage, by its time stamps.

[8] The Operative Complaint uses the terms "shopping cart" and "buggy" interchangeably. (Doc. 1-1 at 10, paras. 12, 13). For consistency, the Court uses "shopping cart."

4

10:12:30).⁹  Approximately forty-four minutes later, Ms. Daniel completed her shopping trip and approached the register. (*Id.* at 10:56:16).  Ms. Daniel purchased various items at the register and returned her shopping cart to the cart corral—located near the Dollar General's entrance. (*Id.* at 10:56:16–10:56:25).  After reaching the cart corral, she removed several plastic bags from her shopping cart and turned to leave the store. (*Id.* at 10:56:24–10:56:37).  As she turned to exit, Ms. Daniel tripped on the front entrance floor mat and fell. (*Id.* at 10:56:37–10:56:40).  Ms. Daniel landed on her left hip and sustained injuries resulting from the fall. (*Id.* at 10:56:40); (doc. 1-1 at 10, paras. 13, 15).  Specifically, Ms. Daniel fractured her hip. (Doc. 43-5 at 5, 10:5–7).  On December 2, 2022—the same day Ms. Daniel fell—Andrea Ingles ("Ms. Ingles"), the on-duty manager of the Phenix City Dollar General prepared a "Customer Incident Report" which documented the day's events. (Doc. 53-9 at 1).  Ms. Ingles described the incident as follows:  "Customer was putting away her cart, when she stepped back[,] the rug pushed up and she tripped; fell on hip[.]" (*Id.*).

Although the parties agree on the general sequence of events described above, they offer conflicting interpretations of the details of Ms. Daniel's fall.  Dolgencorp describes Ms. Daniel's actions as follows:  "[w]ith her arms full of shopping bags and other items, [Ms. Daniel] moved her left foot backward in a dragging motion and made contact with the short edge on the right side of the mat, lost her balance, and fell to the ground." (Doc. 44 at 4, para. 5).  Dolgencorp notes that Ms. Daniel was seventy-six and wore "shoes that

---

⁹ Mr. Daniel and Dolgencorp submitted video surveillance footage of the incident.  Mr. Daniel's submission includes time before and after Ms. Daniel's fall.  The Court uses Mr. Daniel's submission. (Doc. 53-1).

5

appeared to be similar to house slippers" during the accident. (*Id.* at 3, para. 1); (*id.* at 5, para. 6). Ms. Ingles testified that the "right short edge of the mat was not raised, curled, or frayed." (Doc. 43-2 at 4, para. 9).

Unsurprisingly, Mr. Daniel views the surveillance footage in a different light. Mr. Daniel notes that the floor mat "was in a worn condition . . . [had] raised edges along the border . . . and [the floor mat] was not 'directly against the threshold of the door'" before the fall. (Doc. 54 at 7, para. 6). He states, "this mat was not replaced despite clear and obvious signs of wear and tear." (*Id.* at 20). Mr. Daniel argues the "video footage shows [Ms.] Daniel beginning to turn away from the cart return area toward the front door when the floor mat bunched beneath her and caused her to fall." (*Id.* at 4). Mr. Daniel disagrees with Dolgencorp's conclusion that Ms. Daniel "lost her balance." Rather, Mr. Daniel claims that "the mat buckle[d] and bunch[ed] around [Ms.] Daniel's left foot, causing her to trip (not merely lose her balance) and fall to the ground." (*Id.*). Finally, Mr. Daniel notes the "short edge of the indoor mat near the front entrance flipped up and on top of [Ms.] Daniel's left foot." (*Id.* at 6, para. 1). After Ms. Daniel's fall, a Dollar General employee "easily maneuver[ed]" the floor mat "using just the toe of one foot" without using "her hands to pick up or shift the mat." (*Id.* at 8, para. 8); (*see also* doc. 53-1 at 11:22:56–11:23:00).

The floor mat involved in the December 2, 2022 incident was replaced in February 2023. (Doc. 53-4 at 19, 70:20–22). According to Ms. Ingles, the same floor mat arrived at the Dollar General in June 2022 and was in service from June 2022 to February 2023. (*Id.* at 24, 89:3–10). Although the floor mat was replaced in

February 2023, Ms. Daniel's sister, Becky Coreno ("Ms. Coreno"), took photographs of a mat located inside the same Phenix City Dollar General on January 31, 2023. (Doc. 43-1 at 6, 13:21–14:15). Mr. Daniel argues that the mat in Ms. Coreno's photographs "was the same mat involved in M[s]. Daniel's fall" on December 2, 2022. (Doc. 54 at 5). Dolgencorp retorts, "Ms. Coreno has no way to verify the mat she photographed was the mat involved in her sister's incident and simply assumed it was the same mat." (Doc. 44 at 6–7, para. 12).

Ms. Daniel did not provide any testimony regarding the incident. The Operative Complaint alleges that after Ms. Daniel's fall, she "suffer[ed] loss of communication, loss of movement[,] and a brain injury." (Doc. 1-1 at 10, para. 15). Dolgencorp "dispute[s] that [Ms. Daniel's] post-incident neurological deficiencies were proximately caused by the incident or any injuries suffered as a result." (Doc. 44 at 6, para. 10 n.2).

## V. DISCUSSION

Dolgencorp moves for summary judgment on two of Mr. Daniel's three theories: (1) negligence (Count I) and (2) wantonness (Count II).[10] In response to Dolgencorp's motion for summary judgment, Mr. Daniel "concedes that judgment is due to be granted in favor of Dolgencorp . . . on Plaintiff's claim of wantonness." (Doc. 54 at 1). The Court agrees and GRANTS Dolgencorp's motion for summary judgment as to Mr. Daniel's wantonness claim. Therefore, the Court only analyzes Mr. Daniel's negligence claim

---

[10] Mr. Daniel's third theory, respondeat superior and agency, is not a stand-alone cause of action. *See Batton v. Oak Inv. Grp. Corp.*, 591 F. Supp. 3d 1076, 1087 (N.D. Ala. 2022) ("Alabama law does not recognize a stand-alone cause of action for *respondeat superior*[.]") (italics in original).

(Count I).  For the reasons stated below, the Court DENIES Dolgencorp's motion for summary judgment as to Mr. Daniel's negligence claim.[11]

Mr. Daniel claims that the injuries sustained from Ms. Daniel's trip and fall are due to Dolgencorp's negligence by using "a rug that was a trip hazard" and in failing to: (1) "inspect the premises for dangerous conditions"; (2) "remain attentive/maintain a proper lookout for trip hazards"; (3) "inspect the rug at the front entrance"; and (4) "correct the dangerous condition of the rug even though [Dolgencorp] knew or should have known it was a dangerous condition." (Doc. 1-1 at 11, para. 19).  To impose civil liability for Dolgencorp's negligence under Alabama law,[12] the Plaintiff must demonstrate "duty, breach of duty, cause in fact, proximate or legal cause, and damages." *Sessions v. Nonnenmann*, 842 So. 2d 649, 651 (Ala. 2002) (citation omitted).

"The duty owed by a landowner to an injured party depends upon the status of the injured party in relation to the landowner's land, i.e., is the injured party a trespasser, a licensee, or an invitee." *Byrne v. Fisk*, 385 So. 3d 973, 978 (Ala. 2023) (citing *Galaxy Cable, Inc. v. Davis*, 58 So. 3d 93, 98 (Ala. 2010)).  The Court finds and the parties agree that Ms. Daniel was an invitee. *See e.g.*, *Freeman v. Freeman*, 67 So. 3d 902, 907–08 (Ala. Civ. App. 2011) ("A business visitor is a person who is invited to enter or remain on land

---

[11] Mr. Daniel asks the Court to infer negligence because Dolgencorp "disposed of the mat after receiving a preservation request and being served with this lawsuit and discovery asking that the mat be retained." (Doc. 54 at 2).  Because Mr. Daniel survives summary judgment on other grounds, the Court pretermits discussion regarding the spoliation issue at this stage.

[12] "Federal courts sitting in diversity apply the substantive law of the state in which the case arose." *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1132–33 (11th Cir. 2010) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). Alabama law applies because the injury occurred in Alabama. *See Sutton v. Wal-Mart Stores E., LP*, 64 F.4th 1166, 1168 (11th Cir. 2023).

for a purpose directly or indirectly connected with business dealings of the possessor of the land.") (citation omitted); (*see also* doc. 44 at 3, para. 1; doc. 1-1 at 10, para. 17). Therefore, Dolgencorp, as a storekeeper, "is under a duty to exercise reasonable care to provide and maintain reasonably safe premises for the use of [its] customers." *Maddox v. K-Mart Corp.*, 565 So. 2d 14, 16 (Ala. 1990). However, Dolgencorp is not an "insurer of the customer's safety" simply because a customer enters the store. *Id.* "There is no presumption of negligence which arises from the mere fact of an injury to an invitee." *Ex parte City of Music Shoals*, 257 So. 3d 850, 857 n.2 (Ala. 2018) (citation omitted).

Typically, an invitee, like Ms. Daniel, "must show not only that [s]he was injured as the result of a defective condition on the owner's premises, but also that the owner knew or should have known of the defective condition." *Edwards v. Intergraph Servs. Co.*, 4 So. 3d 495, 502 (Ala. Civ. App. 2008). It is a plaintiff's burden "to show that the injury was proximately caused by the negligence of the storekeeper or one of his servants or employees. Actual or constructive notice of the presence of the offending substance or condition must be proven before the proprietor can be held responsible for the injury." *Clayton v. Kroger Co.*, 455 So. 2d 844, 845 (Ala. 1984).

A.   **Defective Condition**

Mr. Daniel must show that Ms. Daniel was injured as a result of Dolgencorp's negligence. Construing the facts in the light most favorable to Mr. Daniel, a triable issue exists: whether Ms. Daniel fell because the floor mat "was in a worn condition." (Doc. 54 at 7, para. 6). Mr. Daniel argues that the floor mat's age and worn condition, as evidenced

by its frayed interior edges, are apparent from the surveillance footage. (*See* doc. 53-6 at 1).



Further, Mr. Daniel points to surveillance footage of a Dollar General employee "easily maneuver[ing]" the mat "using just the toe of one foot." (Doc. 54 at 8, para. 8); (doc. 53-1 at 11:22:56–11:23:00). Mr. Daniel argues that the mat's worn condition and the employee's ability to maneuver the mat evidence "defects and dangers that created an unsafe condition on the premises." (Doc. 54 at 20). Mr. Daniel highlights Dolgencorp's Standard Operating Procedure ("SOP") Manual, which instructs employees to "[p]osition the floor mats directly against the threshold of the door ensuring the mats are not on top of the threshold creating a trip hazard. Dirty mats reduce their effectiveness. Replace floor mats when the edges begin to curl." (Doc. 53-7 at 1, para. 9). Dolgencorp used the floor

mat for approximately seven months at the Dollar General before Ms. Daniel's trip and fall. (Doc. 53-4 at 24, 89:3–10).

Contrastingly, Dolgencorp argues that "[t]here is a complete absence of evidence that there was any defect or condition associated with the mat involved in this incident." (Doc. 44 at 8). Dolgencorp relies on Ms. Ingles' observations "shortly after" the incident. Ms. Ingles states, "I also observed the mat at the front entrance and did not see any concerns with its condition or anything that could have posed a potential hazard. The right short edge of the mat in the location where Ms. Daniel caught the back of her heel laid flat with the floor. The right short edge of the mat was not raised, curled, or frayed." (Doc. 43-2 at 4, para. 9).

Here, after reviewing the record evidence, especially the surveillance video, the Court finds that a genuine dispute of material fact exists regarding the condition of the mat, such that a reasonable jury could find in Mr. Daniel's favor. Dolgencorp's view, informed by Ms. Ingles, is not the only reasonable interpretation of the evidence.[13] Mr. Daniel provides surveillance footage from which a reasonable jury could conclude that the mat was defective. In *Russell v. East Alabama Health Care Authority*, the Court of Civil Appeals of Alabama found that a plaintiff who "crossed over [a] rug located in [a] lobby, lost her balance, and fell" failed to present substantial evidence that the condition of the

---

[13] Mr. Daniel argues on one hand that "the mat was in a worn condition, including having raised edges along the border[.]" (Doc. 54 at 7, para. 6). Later, Mr. Daniel argues, in light of the floor mat's disposal that "whether the mat was frayed, torn, warped, or otherwise hazardous cannot be determined from video screenshots, but it could have been observed during a physical inspection of the object." (*Id.* at 14). The Court finds that a reasonable jury could conclude that the floor mat presented a defective condition, especially when considering the video surveillance footage.

rug caused her fall. 192 So. 3d 1170, 1172, 1178 (Ala. Civ. App. 2015). The *Russell* plaintiff, in the absence of video surveillance footage, relied in part on deposition testimony "that . . . the mere presence of the rug caused" her fall. *Id.* at 1173–75. Here, Mr. Daniel does not rely solely on testimony. Rather, Mr. Daniel provides objective video surveillance footage to establish that a reasonable jury could find that the Dollar General floor mat was defective.

The video surveillance footage, when viewed in the light most favorable to Mr. Daniel, shows a worn floor mat, that moved with some ease, providing sufficient evidence for a reasonable jury to conclude that the condition of the mat was defective, such that Dolgencorp was negligent. (Doc. 53-6 at 1). Dolgencorp argues that the "right short edge of the mat laid flat on the floor and was not raised, curled, or frayed." (Doc. 44 at 5). A reasonable jury could find that even if the right short edge of the mat was not raised, the frayed areas on the top and bottom of the floor mat show its age, allowing the jury to find the mat was defective. Further, a reasonable jury could find that the floor mat's frayed condition indicated such wear and tear that the mat had deteriorated to the point that it was too easily maneuverable (therefore defective), as shown by the Dollar General employee moving the mat "using just the toe of one foot." (Doc. 54 at 8, para. 8). Next, Mr. Daniel must show that Dolgencorp had actual or constructive notice of the floor mat's condition.

**B.     Notice**

"Actual or constructive notice of the presence of the offending substance or condition must be proven before the proprietor can be held responsible for the injury." *Clayton*, 455 So. 2d at 845. Mr. Daniel can prove Dolgencorp had notice of the condition

of the floor mat in one of four ways: (1) the dangerous condition existed for enough time to impute constructive notice to Dolgencorp; (2) Dolgencorp caused the dangerous condition; (3) Dolgencorp knew of the dangerous condition; or (4) Dolgencorp was delinquent in not discovering and resolving the dangerous condition. *See Maddox*, 565 So. 2d at 16; *Clayton*, 455 So. 2d at 845. Here, after an independent review of the record, the Court finds that a reasonable jury could conclude that the dangerous condition existed for enough time to impute constructive notice to Dolgencorp.

In *Clayton*, the Alabama Supreme Court reviewed a plaintiff's negligence claim arising from a trip and fall "on a wrinkled or raised floor mat located in front of the entrance to a Kroger store." *Clayton*, 455 So. 2d at 845. *Clayton* explained that the plaintiff failed to provide "evidence to show that the mat had been wrinkled for an inordinate length of time so as to impute constructive notice." *Id.* Here, Mr. Daniel has provided evidence to show that the floor mat was worn, as evidenced by its fraying and maneuverability, "for an inordinate length of time" such that Dolgencorp had constructive notice of the floor mat's condition. *Id.* Mr. Daniel submitted surveillance footage that begins on December 2, 2022, at 9:55 a.m. (Doc. 53-1 at 9:55:00). The frayed areas on the top and bottom of the floor mat are visible, well before Ms. Daniel entered the Dollar General. The floor mat remains placed in front of the entrance doors until Ms. Daniel's fall approximately one hour later at 10:56 a.m. (*Id.* at 10:56:37–10:56:40). The surveillance footage evidences the floor mat's condition before, during, and after Ms. Daniel's fall. Dolgencorp argues that "[n]o reasonable jury can infer constructive notice from the evidence presented. Simply put, speculative testimony regarding the condition of the floor mat is not [ ] sufficient to

13

establish a genuine issue as to the *prima facie* element of notice[.]" (Doc. 44 at 10) (emphasis in original). Dolgencorp's argument is unpersuasive.

Put differently, Mr. Daniel presents evidence that the floor mat, with its apparent worn condition, "had been on the floor for [an] appreciable time." *See Cash v. Winn-Dixie Montgomery, Inc.*, 418 So. 2d 874, 876 (Ala. 1982). "The Alabama Supreme Court has cautioned that a 'stop-watch' rule that considers only how long a . . . hazard might have been on the floor is inappropriate in slip and fall cases because each one must be decided on its own facts." *Harrell v. Wal-Mart Stores E., LP*, 724 F. Supp. 3d 1250, 1268 (N.D. Ala. 2024)[14] (citing *Ex parte Travis*, 414 So. 2d 956, 961 (Ala. 1982)). Mr. Daniel points to the video surveillance footage which establishes that the floor mat, showing obvious signs of age, was placed near the entrance of the Dollar General for approximately one hour—allowing a jury to impute constructive knowledge to Dolgencorp. *See McCombs v. Bruno's, Inc.*, 667 So. 2d 710, 713 (Ala. 1995) (evidence that substance had been on the floor for "15 minutes or more" "creat[ed] a question of fact as to whether [the store] had notice of the spill before the plaintiff's fall, and if so, how much notice."); *see also Bruno's, Inc. v. Schad*, 628 So. 2d 934, 936 (Ala. Civ. App. 1993) (twenty or more minutes qualifies as an appreciable time). Further, the mat was used inside the Phenix City Dollar General for approximately seven months before Ms. Daniel's December 2, 2022 fall. (Doc. 53-4 at 24, 89:3–10).

---

[14] The Court here, and elsewhere in the Opinion, cites to nonbinding authority. While the Court recognizes that these cases are not precedential, the Court finds them persuasive.

Therefore, a reasonable jury would not need to speculate but could review the evidence and find the floor mat's apparent worn condition at the beginning of the video surveillance footage (one hour before Ms. Daniel's fall) was sufficient to impute constructive notice to Dolgencorp.[15] *Cf. Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("Speculation does not create a *genuine* issue of fact[.]") (citation omitted) (emphasis in original). Further, that the Dollar General employee repositioned the mat after the incident with relative ease, by sliding it with her foot, as opposed to her reaching down to lift it, evidences an appreciation on her part that the mat's rubber backing would not prevent its movement.

## C. Proximate Cause

Dolgencorp argues that Mr. Daniel "cannot present any evidence that [Ms. Daniel's] fall was proximately caused by [s]ome act or omission on the part of [Dolgencorp]." (Doc. 44 at 11). Mr. Daniel characterizes Dolgencorp's assertions as "simply incorrect." (Doc. 54 at 15). Under Alabama law, "[i]t is well established that proximate cause is generally a jury question." *Lands v. Ward*, 349 So. 3d 219, 228 (Ala. 2021) (citing *Giles v. Gardner*, 249 So. 2d 824, 826 (1971)). Although typically left to the jury, a court may decide proximate causation as a matter of law "when the facts are such that reasonable men must draw the same conclusion that the question of proximate cause is one of law for the courts." *Durden v. Gaither*, 504 So. 2d 258, 259 (Ala. 1987) (citation omitted). Mr. Daniel

---

[15] Because the Court finds that a reasonable jury could conclude that Dolgencorp had constructive knowledge of the floor mat's condition, the Court pretermits discussion on whether Dolgencorp's "inadequate" inspection procedures imputed knowledge to Dolgencorp. (Doc. 54 at 18–21).

does not have to prove the proximate cause of Ms. Daniel's fall by direct evidence—"[i]ndeed, while negligence cannot be proved by mere speculation, negligence can be established through circumstantial evidence." *Harris v. Flagstar Enters., Inc.*, 685 So. 2d 760, 762 (Ala. Civ. App. 1996). "There is nothing wrong with a case built around sufficient circumstantial evidence, provided the circumstances are proved and not merely presumed." *Folmar v. Montgomery Fair Co., Inc.*, 309 So. 2d 818, 821 (Ala. 1975).

As explained earlier, the record, viewed in the light most favorable to Mr. Daniel would support a reasonable jury finding that: (1) the floor mat was old and worn (doc. 53-6 at 1; doc. 53-4 at 24, 89:3–10); (2) the condition of the mat was defective, based on the video surveillance footage (*see generally* doc. 53-1 at 9:55:00–11:23:00); (3) the floor mat's condition was recorded on video for approximately one hour before Ms. Daniel's fall (*id.* at 9:55:00–10:56:30); (4) the floor mat was easily maneuvered after Ms. Daniel's fall (*id.* at 11:22:56–11:23:00); (5) Dolgencorp's SOP manual implies that the floor mat should have been replaced (doc. 53-7 at 1, para. 9); and (6) the contemporaneously written Customer Incident Report suggests the "rug pushed up and [Ms. Daniel] tripped" (doc. 53-9 at 1).

The Court will not diverge from the general rule that questions of proximate causation are left to the jury. A factfinder may be persuaded by other evidence at trial that Ms. Daniel's fall was caused by her foot and choice of footwear and not by the floor mat's worn condition. However, a factfinder that credits the video surveillance footage (including the mat's maneuverability), Dolgencorp's SOP manual, and contemporaneous

Customer Incident Report, could rationally conclude that Ms. Daniel tripped and fell on a defective floor mat. The issue of causation should therefore go to trial.

### D.      Damages

Finally, Mr. Daniel must show that Ms. Daniel suffered damages to hold Dolgencorp liable for negligence under Alabama law. *See Sessions*, 842 So. 2d at 651 (citation omitted). Mr. Daniel argues that Ms. Daniel suffered damages from a fractured hip and from her pertinent surgery—resulting in Ms. Daniel's "altered mental status." (Doc. 54 at 9, para. 12). Dolgencorp does not contest that Ms. Daniel fell and was injured as a result. Dolgencorp also "does not dispute [Ms. Daniel's] apparent cognitive deficiencies following the [December 2, 2022] incident." (Doc. 44 at 6, para. 10 n.2). Rather, Dolgencorp argues that Ms. Daniel's "post-incident neurological deficiencies were [not] proximately caused by the incident or any injuries suffered as a result." (*Id.*). Because Dolgencorp does not dispute that Ms. Daniel was damaged as a result of the fall (a fractured hip), Mr. Daniel meets his burden at this stage.

## VI.  CONCLUSION

For the reasons stated, it is

ORDERED that Dolgencorp's motion for summary judgment (doc. 43) is GRANTED as to Mr. Daniel's wantonness claim (Count II) and DENIED as to Mr. Daniel's negligence claim (Count I).

DONE this 2nd day of July, 2025.

      /s/ Emily C. Marks  
EMILY C. MARKS  
CHIEF UNITED STATES DISTRICT JUDGE