IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| RALPH DANIEL, as Personal Representative of the Estate of CAROLE DANIEL,  Plaintiff, v. DOLGENCORP, LLC,  Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) )   CIVIL CASE NO. 3:23-cv-135-ECM [WO] |

**MEMORANDUM OPINION and ORDER**

**I. INTRODUCTION**

In December 2022, Carole Daniel ("Ms. Daniel") tripped on a floor mat and fell inside a Phenix City, Alabama Dollar General retail store ("Dollar General"). Ms. Daniel suffered injuries and later sued Dolgencorp, LLC ("Dolgencorp"), the corporate entity operating the Dollar General in Alabama state court. (Doc. 1-1 at 8–14).[1] Dolgencorp removed this action to this Court, asserting diversity jurisdiction under 28 U.S.C. § 1332. (Doc. 1 at 4, para. 10).

On June 15, 2024, Ms. Daniel passed away. (Doc. 26 at 1). Ms. Daniel's husband, Ralph Daniel ("Mr. Daniel"), as Personal Representative of the Estate of Carole Daniel, was substituted as the proper plaintiff in this action.[2] (Doc. 36). Following discovery,

---

[1] For clarity, the Court refers to the document and page numbers generated by CM/ECF.

[2] The remainder of this Memorandum Opinion and Order refers to Mr. Daniel in his capacity as personal representative of Ms. Daniel's estate.

Dolgencorp moved for summary judgment. (Doc. 43). On July 2, 2025, this Court granted Dolgencorp's summary judgment motion in part and denied it in part. (*See* doc. 62). Mr. Daniel's negligence claim remains pending. This case is set for jury selection and trial on August 25, 2025.

Now pending before the Court is Dolgencorp's motion to exclude the expert report and testimony of Mark E. Williams ("motion to exclude") (doc. 45), which Mr. Daniel opposes (doc. 73). The motion is fully briefed. (*See* docs. 45, 73, 86, 87). Based on a thorough review of the record, the briefs, the applicable law, and for the reasons that follow, Dolgencorp's motion to exclude is due to be GRANTED.

## II. JURISDICTION AND VENUE

The parties are completely diverse, and the amount in controversy exceeds $75,000. (Doc. 1). Therefore, the Court has original subject matter jurisdiction in this proceeding pursuant to 28 U.S.C. § 1332. (*See* doc. 62 at 2 n.3). Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

## III. STANDARD OF REVIEW

Federal Rule of Evidence 702 ("Rule 702"), as explained by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny, governs the admission of expert evidence. *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (footnote omitted). District courts must "ensure that speculative, unreliable expert testimony does not reach the jury." *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010) (citing *Daubert*, 509 U.S. at 597 n.13). Thus, lower courts serve as "'gatekeepers'

which admit expert testimony only if it is both reliable and relevant." *Rink*, 400 F.3d at 1291. Rule 702 requires trial courts to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

FED. R. EVID. 702. Expert testimony may be admitted if three requirements are met: (1) "the expert must be qualified to testify competently regarding the matter he or she intends to address"; (2) "the expert's 'methodology . . . must be reliable as determined by a *Daubert* inquiry'"; and (3) "the expert's 'testimony must assist the trier of fact through the application of expertise to understand the evidence or determine a fact in issue.'" *Adams v. Lab'y Corp. of Am.*, 760 F.3d 1322, 1328 (11th Cir. 2014) (quoting *Kilpatrick*, 613 F.3d at 1335). "While there is inevitably some overlap among the basic requirements—

qualification, reliability, and helpfulness—they remain distinct concepts and the courts must take care not to conflate them." *Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1193 (11th Cir. 2011) (citation omitted). Additionally, the expert testimony's proponent "bears the burden of showing, by a preponderance of the evidence, that the testimony satisfies each prong." *Hendrix ex rel. G.P. v. Evenflo Co., Inc.*, 609 F.3d 1183, 1194 (11th Cir. 2010).

When evaluating the "reliability" prong, this Court may consider several relevant factors, including: (1) "whether the theory or technique 'can be (and has been) tested,' (2) 'whether the theory or technique has been subjected to peer review and publication,' (3) 'in the case of a particular scientific technique, . . . the known or potential rate of error,' and (4) whether the theory or technique is generally accepted by the relevant scientific community." *Evenflo Co., Inc.*, 609 F.3d at 1194 (citing *Daubert*, 509 U.S. at 592–94). Because these four factors are non-exhaustive, this Court has "substantial discretion in deciding how to test an expert's reliability." *Id.* (quoting *Rink*, 400 F.3d at 1292). "[T]he rules relating to expert testimony 'are not precisely calibrated and must be applied in case-specific evidentiary circumstances that often defy generalization.'" *Doe v. Rollins College*, 77 F.4th 1340, 1347 (11th Cir. 2023) (quoting *United States v. Alabama Power Co.*, 730 F.3d 1278, 1285 (11th Cir. 2013)). "[T]he rejection of expert testimony is the exception rather than the rule." *Moore v. Intuitive Surgical, Inc.*, 995 F.3d 839, 850 (11th Cir. 2021) (quoting FED. R. EVID. 702 Advisory Committee's Note to 2000 Amendments).

## IV. BACKGROUND[3]

On December 2, 2022, after shopping at her local Dollar General, Ms. Daniel tripped on the front entrance floor mat and fell. (Doc. 53-1 at 10:56:37–10:56:40). Ms. Daniel landed on her left hip and sustained injuries from her fall. (*Id.* at 10:56:40). In support of Mr. Daniel's theory that Ms. Daniel's fall was caused by Dolgencorp's negligence, he submits proposed expert Mark E. Williams' ("Mr. Williams") "Architect's Report" ("expert report").

## V. EXPERT OPINION

### A.   Mark E. Williams[4]

Dolgencorp moves, under Rules 702 and 403 to exclude Mr. Williams' expert report and testimony because they fail to clear factors two and three of the *Daubert* inquiry, arguing: (1) Mr. Williams' methodology is unreliable and (2) his opinions will not assist the trier of fact. (Doc. 45 at 6–9). Mr. Daniel opposes Dolgencorp's motion to exclude arguing that Mr. Williams' expert report and testimony are both reliable and will assist the trier of fact. (Doc. 73 at 5–11). Dolgencorp later provided a supplemental brief and

---

[3] The Court recounts only the facts necessary to evaluate Dolgencorp's motion to exclude. (Doc. 45). The Court recited a more complete version of the facts in its summary judgment Memorandum Opinion and Order. (*See* doc. 62 at 4–7).

[4] On February 18, 2025, Dolgencorp moved to exclude Mr. Williams' expert testimony. (Doc. 45). Shortly after, Mr. Daniel attached Mr. Williams' March 28, 2025 "[s]upplemental [a]ffidavit" to his summary judgment response. (Doc. 53-8 at 1–4). Mr. Williams notes that his March 2025 affidavit "should be read in conjunction with" his December 2023 expert report. (*Id.* at 2, para. 8). Although Dolgencorp does not explicitly reference Mr. Williams' supplemental affidavit, the Court will consider Dolgencorp's arguments when evaluating the statements contained therein.

memorandum in support of its motion to exclude. (*See* doc. 86-1). Soon after, Mr. Daniel responded in opposition to Dolgencorp's supplemental brief. (*See* doc. 87).

Mr. Williams is an Alabama licensed architect, with more than thirty years of experience. (Doc. 53-8 at 1, para. 3). Mr. Williams expresses familiarity with "various codes and nationally recognized industry standards for walkway safety to the design, construction, and maintenance of impervious floors at commercial retail developments." (*Id.* at 2, para. 6). Mr. Daniel argues Mr. Williams "is entirely qualified to opine on the matters addressed in his report."[5] (Doc. 73 at 1).

Mr. Williams reviewed several pieces of evidence, in forming his expert opinion, including: (1) December 2, 2022 surveillance footage of Ms. Daniel's fall (doc. 53-8 at 18, 20); (2) the pertinent Customer Incident Report (*id.* at 19); (3) Dolgencorp's "Safety Orientation Training Module" (*id.*); (4) industry standards (*id.* at 21–23); (5) Dolgencorp's Standard Operating Procedure ("SOP") Manual (*id.* at 24); and (6) five January 31, 2023 photographs taken by Ms. Daniel's sister, Becky Coreno ("Ms. Coreno") (*id.* at 16). Mr. Williams did not personally examine the specific mat involved in Ms. Daniel's fall, but noted he was familiar with the mat's manufacturer and its "'waffle' pattern of raised squares." (*Id.* at 17).

---

[5] Dolgencorp does not object to the admission of Mr. Williams as an expert on *Daubert's* first prong—whether he is "qualified to testify competently." *Adams*, 760 F.3d at 1328 (quoting *Kilpatrick*, 613 F.3d at 1335). Therefore, the Court pretermits discussion on Mr. Williams' qualifications.

1.     **Opinions Offered**

Based on his "education, training, and experience in the practice of architecture and facility safety[,]" Mr. Williams concluded, among other things, that the floor mat was a dangerous tripping hazard because: (1) it was "loose-laid" and had raised edges, which caused Ms. Daniel to trip and (2) it was improperly "secured down." (*Id.* at 2, 25). Mr. Williams opined that the "hazards associated with loose-laid floor mats are well documented and have been widely known for many years." (*Id.* at 2, para. 11).

Further, Mr. Williams' affidavit concludes that Dolgencorp "violated the standard of care for property maintenance, and created the dangerous condition that caused [Ms.] Daniel[']s[] fall and injury." (*Id.* at 4, para. 24). At bottom, Mr. Williams offers expert testimony that Dolgencorp's floor mat was a dangerous tripping hazard that ultimately caused Ms. Daniel to trip and fall. (*Id.* at 25).

2.     **Analysis**

Mr. Daniel bears the burden to show that Mr. Williams is qualified to testify and satisfies by a preponderance of the evidence, that his proffered testimony is reliable and will assist the trier of fact. *Evenflo Co., Inc.*, 609 F.3d at 1194. Here, Mr. Daniel fails to show that Mr. Williams' proffered testimony will assist the trier of fact.[6]

a.     **Assist the Trier of Fact**

For the Court to permit Mr. Williams' expert testimony, the Court must determine that Mr. Williams' "scientific, technical, or other specialized knowledge will help the trier

---

[6] Because the Court finds that Mr. Williams' testimony will not assist the trier of fact, the Court pretermits discussion on whether Mr. Williams' testimony satisfies *Daubert's* second prong—reliability.

of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702; *see also Daubert*, 509 U.S. at 591. Although Mr. Williams is an accomplished architect, the Court cannot find that his testimony will assist the trier of fact. Here, Ms. Daniel's trip and subsequent fall are captured on video. (*See* doc. 53-1 at 10:56:37–10:56:40). "[E]xpert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." *United States v. Frazier*, 387 F.3d 1244, 1262 (11th Cir. 2004); *see also Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993) ("Testimony from an expert is presumed to be helpful unless it concerns matters within the everyday knowledge and experience of a lay juror.").[7]

In its role as gatekeeper, the Court is not convinced that Mr. Williams' expert report or testimony regarding the mat's condition will assist the jury, considering that his testimony relies on the video footage of Ms. Daniel's fall. *See Castro v. Wal-Mart Real Est. Bus. Tr.*, 645 F. Supp. 3d 638, 645 (W.D. Tex. 2022) (granting a motion to exclude because the "expert should not be permitted to interpret the video's contents where the expert is no better suited than a lay person to do so."). This case does not involve complicated technical facts or scientific evidence, where an expert's specialized knowledge would assist the jury. The parties' dispute in this case while important—is simple—whether Ms. Daniel fell because the floor mat "was in a worn condition." (Doc. 62 at 9 (quoting doc. 54 at 7, para. 6)). Courts rely on jurors to weigh evidence and acknowledge that "[j]urors do not leave their knowledge of the world behind when they enter a courtroom

---

[7] Here, and elsewhere in this Opinion, the Court cites nonbinding authority. While the Court acknowledges these cases are nonprecedential, the Court finds them persuasive.

and they do not need to have the obvious spelled out in painstaking detail." *Dawson v. Delaware*, 503 U.S. 159, 171 (1992) (Thomas, J., dissenting).

For example, Mr. Williams uses industry standards to define "curling"—a "phenomen[on] associated with mats where the border of a mat does not lay flat but projects upward." (Doc. 53-8 at 21). Undoubtedly there are scenarios in which industry standards and defined terms may assist the jury, but any juror would be familiar with what a curled mat looks like, without reference to any industry standards or "phenomena." Jurors are capable of using common sense when it evaluates the floor mat's condition and placement in the surveillance video. *See e.g.*, *BMC Indus., Inc. v. Barth Indus., Inc.*, 160 F.3d 1322, 1337 (11th Cir. 1998) ("if it walks like a duck, quacks like a duck, and looks like a duck, then it's a duck."). In this Court's Order denying summary judgment as to Mr. Daniel's negligence claim, the Court found "after reviewing the record evidence, especially the surveillance video . . . that a genuine dispute of material fact exists regarding the condition of the mat, such that a reasonable jury could find in Mr. Daniel's favor." (Doc. at 11). The Court reached this conclusion without considering Mr. Williams' expert report.[8]

Further, Mr. Williams' opinions could confuse the jury. His expert report finds "[t]he failure of Dollar General to provide a floor mat heavy enough not to move or properly secure the mat in place, *violate the standard of care* for property maintenance,

---

[8] Tellingly, Mr. Williams's proffered opinion was recently excluded in a premises liability case on grounds that "Mr. Williams has not demonstrated that his opinion is based on any scientific, technical, or other specialized knowledge—i.e., knowledge beyond the common experience of an ordinary layperson—that would help the trier of fact to understand the evidence[.]" *Stanley v. Denver Mattress Co., LLC*, 2024 WL 4018180, at *3 (E.D. Tenn. June 18, 2024).

and created the dangerous condition that caused [Ms. Daniel's] fall and injury." (Doc. 53-8 at 25, para. 7.6) (emphasis added). Mr. Williams' discussion of "standard of care" would at the very least confuse the jury, as "[a] witness . . . may not testify to the legal implications of conduct; the court must be the jury's only source of law." *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990). Lower courts "must remain vigilant against the admission of legal conclusions[.]" *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1112 n.8 (11th Cir. 2005). Further, as discussed in this Court's Order, a jury can determine whether the mat was properly secured by evaluating the video surveillance footage. (*See* doc. 62 at 15) ("[T]hat the Dollar General employee repositioned the mat after the incident with relative ease, by sliding it with her foot, as opposed to her reaching down to lift it, evidences an appreciation on her part that the mat's rubber backing would not prevent its movement.").

At bottom, Mr. Daniel fails to show that Mr. Williams' testimony would satisfy *Daubert's* helpfulness prong. The jury is capable of reviewing and weighing the evidence, including the objective surveillance video and deciding for itself whether Dolgencorp was negligent. Therefore, Dolgencorp's motion to exclude (doc. 45) is due to be granted—Mr. Williams' testimony is excluded.

## VI. CONCLUSION

For the reasons stated, it is

ORDERED that Dolgencorp's motion to exclude (doc. 45) is GRANTED.

DONE this 22nd day of August, 2025.

                                        /s/ Emily C. Marks
                                  EMILY C. MARKS
                                  CHIEF UNITED STATES DISTRICT JUDGE